UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Nilejawel Stora,<br><br>                              Plaintiff,<br><br>               -against-<br><br>Russell Marquis et al.,<br><br>                              Defendants. | 22-cv-8642 (AS)<br><br><u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

Nilejawel Stora has sued a slate of parole officers over a search of her home. Defendants moved for summary judgment, arguing that the search wasn't illegal and that, in any event, they're shielded by qualified immunity. The Court GRANTS IN PART and DENIES IN PART the motion for summary judgment.

## BACKGROUND

On August 27, 2021 parole officers arrived at Stora's house in the early morning. Dkt. 105 ¶ 31. They were looking for her brother, Johnny Houston. *Id.* Houston was on parole and the parole office got an email with photos and video suggesting that he had a gun. *Id.* ¶ 13, 24. He had told the parole office that he'd be staying with his sister, Stora, and so that's where parole officers showed up to do a safety check on him. *Id.* ¶ 22.

That's when the witnesses' stories begin to diverge. In a deposition, Parole Officer Russell Marquis (a defendant here) said that a group of parole officers showed up to Stora's apartment and were given permission to enter by her father. Dkt. 97-2 at 30–31; 53:15–18. Then they walked through the living room and the bedroom, didn't see anybody in the apartment beyond Stora's father, and left. *Id.* at 32:22–25. Stora has a couple of different views of the incident. In her deposition she says that she was in her bedroom when she heard knocking on the door. Dkt. 97-6 at 69:7–11. Her father, who often stays with her and sleeps in the living room, opened the door. *Id.* at 54:5–8, 68:15–16. Outside was a mix of NYPD officers and parole officers. *Id.* at 69:7–23, 75:3. The police officers then entered her home with guns drawn while the parole officers stayed outside. *Id.* at 72:18–73:5, 78:23–24. The story is a little different in her statement of facts, in which she instead alleges more broadly that "defendants" entered and searched her apartment. Dkt. 105 ¶ 50. But according to both accounts officers inside her apartment ordered her not to leave and ransacked her place, breaking an expensive watch, a tv, a gaming console, and a dresser along the way. Dkts. 97-6 at 80:16–81:21, 132:16–20; 105 ¶ 34.

That's the basis for this suit, which Stora brought under Section 1983 for violations of her constitutional rights. 42 U.S.C. § 1983. At first, she named the parole officers as defendants as

well as anonymous NYPD officers and the NYPD. But those defendants weren't served and have since been terminated. The remaining defendants are all parole officers employed by the New York Department of Corrections and Community Supervision (DOCCS). They've filed an answer, Dkt. 87, and have moved for summary judgment. Dkt. 95.

## LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if a reasonable jury could find for either side. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a fact is "material" if it could "affect the outcome." *Id.* The Court views the record "in the light most favorable to the non-movant." *Williams v. MTA Bus Co.*, 44 F.4th 115, 126 (2d Cir. 2022) (cleaned up). But if the non-movant will bear the burden of proof on an issue at trial, it must point to some evidence supporting the "essential element[s]" of its position. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## DISCUSSION

Stora's complaint has two counts. The first challenges the parole officers' initial entrance into her apartment. The second challenges the way that they conducted the search that followed. For the reasons below, the Court grants summary judgment to defendants on the claims related to the initial entrance but denies summary judgment on the claims related to the conduct of the search with one exception. The exception is that the Court grants summary judgment to defendants on any claim against Vanessa Alcantara, who the evidence unequivocally shows wasn't present at the home visit.

## I. The initial entrance wasn't clearly unlawful, so defendants are shielded by qualified immunity

Stora's Fourth Amendment challenge turns on the validity of the parole officers' entrance to her house to search it. A search of a parolee's home is permitted without a warrant if it's "reasonably related to the performance" of the parole officer's duties. *United States v. Braggs*, 5 F.4th 183, 188 (2d Cir. 2021). This is a condition of parole that the parolee agrees to. But this case presents a twist: It isn't Houston's residence, but instead his sister's. That tees up two questions. Did Stora agree to a lower degree of Fourth Amendment protection by signing up to be her brother's approved DOCCS residence? If not, was the search nonetheless legally permissible?

Starting with the first question, the parties disagree about whether Stora agreed to offer her residence up to her brother. According to DOCCS, a parole officer called her and they agreed to the deal over the phone. Dkt. 97-1 at 16:7–17:25. According to Stora, that never happened. She says that she had talked to her brother's parole officer only once before, and only to let her know that he'd miss an appointment because he was in the hospital. Dkt. 97-6 at 54:19–55:18. Lending her story some support, DOCCS is supposed to follow up on verbal consent by visiting the resident's home and verifying their ID and Houston's parole officer never did that (because, she says,

nobody ever answered the door). Dkt. 97-1 at 14:2–24, 18:2–20. Put simply, the parties have presented directly contradicting testimony. "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (internal quotations omitted). That means that the Court can't decide whether Stora indeed agreed to provide her brother's residence. Qualified immunity wouldn't shield defendants absent some other legal theory that might justify the entrance *even if* Stora hadn't agreed.

Moving to the second question, then, the defendants argue that even if Stora didn't offer up her residence, the officers were "reasonably sure" that he did reside there. Citing a case from the Western District of New York, they argue that qualified immunity applies when parole officers are looking to search a parolee's residence and reasonably believe that he resides at the search's location, even if that belief is mistaken and even if others also reside there. *Reed v. Shepard*, 321 F. Supp. 3d 429, 445 (W.D.N.Y. 2018) (quoting *Motley v. Parks*, 432 F.3d 1072, 1079 (9th Cir. 2005)). The record reflects that Houston had represented to the parole officers that he intended to make his sister's address his primary address—he told them this on July 6, July 13, and July 20. Dkt. 114-1 at 7. The holdup, he said, was getting her permission. *Id.* Though this became suspicious over time, Parole Officer Alcantara's notes reflect that he "continues to say that he sometimes stay at his sister house." *Id.* at 6. Alcantara's notes then say that she called Stora on July 27 to confirm that Houston would be staying with her (Stora, of course, denies that this call happened). *Id.* And Houston submitted his sister's address to parole later that same day, in the evening. *Id.* From then on, Houston reported to parole that he was living at his sister's house. He did so on August 3, August 10, and August 24. *Id.* at 4–5. The search of Stora's apartment was three days later on August 27. *Id.* at 4. At that point, all of the parole officers' information had pointed to Stora's house as the address, even accepting that she may not have agreed to house him.

Here, qualified immunity shields the parole officers. To support a claim under § 1983, the parole officers' conduct must have violated a "clearly established" right, "the existence of which a reasonable person would have known," *Moore v. Vega*, 371 F.3d 110, 114 (2d Cir. 2004). That doesn't "require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). Stora points to no applicable precedent. In fact, the parties identified only a single case in which a third party protested a parole officer's search of their home. This is *Reed v. Shepard*, mentioned earlier. The *Reed* decision held that a search *wasn't* a Fourth Amendment violation when the officers were "reasonably sure" that the parolee was living at the residence. 321 F. Supp. 3d at 445. So, while the authorities here are thin, what is clear is that the parole officers didn't violate a "clearly established right" that a "reasonable person would have known."

The only remaining inquiry is into whether the search was reasonably related to the parole officers' duties. *Braggs*, 5 F.4th at 188. It was. They received an email from an NYPD officer with information suggesting that Houston had a firearm. Dkt. 97-4. Stora objects that this is hearsay. But it isn't offered for the truth of the matter asserted; it's offered for its effect on the listeners: It

reasonably prompted the parole officers to conduct the search. So it isn't hearsay and the Court can consider it.

## II. There are genuine disputes of material fact about the officers' conduct during the search

What happened after the initial entrance is fiercely disputed. Stora alleges that the officers were careless with their search, destroying her property. Dkt. 66 ¶ 41. "Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression." *United States v. Ramirez*, 523 U.S. 65, 71 (1998). On Stora's telling of the events, the officers carelessly destroyed a television, a gaming console, an expensive watch, and her dresser drawers. Dkt. 97-6 at 80:19–22. Defendants don't argue that this conduct would be subject to qualified immunity; they instead deny that they conducted the search at all.

To do that, they seize on how Stora described these events and use it against her. Stora (who is legally blind) testified that the people who entered her apartment were NYPD officers from her local precinct. *Id.* at 72:11–14. On her telling, parole officers were also there, but waited at the door. *Id.* at 72:18–20. That sets up defendants' argument: It must have been *NYPD* officers who conducted the search; not any parole officer.

This creates an unusual situation. Both sides' arguments are contradicted by their own testimony. Stora's, by her own deposition statement that identified the people who conducted the search as police officers. The defendants', by testimony from a parole officer on the visit who said that there were no NYPD officers in the apartment. Dkt. 97-2 at 58:15–24. At summary judgment, the Court must draw all "justifiable inferences" in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Here, the inference that would help Stora is an unusual one: that she was either wrong or lying when she testified that the people who searched her home were police officers. There's evidence suggesting that she got it wrong. For example, a parole officer testified that some of them may have been wearing jackets. Dkt. 97-2 at 29. Those might have looked like NYPD-garb to Stora, who's legally blind and naturally could have assumed that it was her local police. Dkt. 97–5 at 8:14. The Court makes the justifiable inference, then, that Stora was wrong about who entered her apartment, helping to reconcile the testimony given by both sides. On that view, parole officers would have been the ones who conducted the search. And, at trial, the question will be which side is telling the truth about what happened in the apartment.

With all that said, the evidence shows that one of the parole officer defendants wasn't there during the search. Johnny Houston's parole officer, Vanessa Alcantara, didn't come on the home visit. Stora's testimony doesn't support that she was there and Alcantara testified that she wasn't. Dkts. 97-6 at 71:24–25 ("I don't remember seeing a female."); Dkt. 97-1 at 30:3–5. ("Q: You were not present at 64 Essex Street? A: Absolutely not.") So the Court denies summary judgment to all defendants except for Alcantara with respect to the claims that the search was excessive and grants her summary judgment on all claims.

## CONCLUSION

Questions of credibility are for the jury, not the judge. Stora's story may be thin. But it's up to the jury to decide whether to believe her or to instead believe the officers about what happened. The Court grants summary judgment to all defendants with respect to Stora's claims premised on unlawful entry, but denies summary judgment to all defendants but Alcantara with respect to Stora's claims about how the search was conducted.

The Clerk of Court is directed to terminate Dkt. 95. The parties are directed to meet and confer and propose dates for trial by January 19, 2026.

SO ORDERED.

Dated: December 30, 2025
New York, New York

ARUN SUBRAMANIAN
United States District Judge